UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

KITTITAS CO. FIRE DISTRICT #8,  )
                                )     No. CV-11-3103-LRS
          Plaintiffs,           )
                                )
     vs.                        )     **ORDER DENYING MOTION FOR**
                                )     **PRELIMINARY INJUNCTION**
UNITED STATES FOREST SERVICE,   )
UNITED STATES DEPARTMENT OF     )
AGRICULTURE,                    )
                                )
          Defendants,           )
                                )
WASHINGTON STATE PARKS AND      )
RECREATION COMMISSION,          )
                                )
          Intervenor-Defendant. )
                                )
_____)

   **BEFORE THE COURT** is Plaintiff's Motion For Preliminary
Injunction.  (ECF No. 5).  This motion was heard with oral
argument on Thursday, December 1, 2011.  (ECF No. 53).  For the
reasons set forth below, the Court **DENIES** Plaintiff's Motion for
Preliminary Injunction.  (ECF No. 5).

                                I

   Fire Station #83 was built in 2005 on donated property with
donated labor.  (ECF No. 10 at 1).  Forest Service Road 5400

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION- 1**

provides access to Station #83.  (ECF No. 10 at 1).  Pursuant to
road closure orders issued by the Forest Service, Forest Service
Road 5400 has been closed for wheeled vehicle use during the
winter months for approximately the last thirty years.  (ECF No.
1; 29).

Fire Station #83 was open and accessible during the winter
months of 2005-2009.  (ECF No. 1, 10).  During that time, the
Fire District used a separate road connected to Crystal Springs
Sno-Park, "under a special permit issued by the Forest Service."
(ECF No. 10 at 3). During oral arguments, the Forest Service
denied issuing a special use permit for this "illegal" road.

Fire Station #83 was closed and not accessible during the
winter months of 2009-2011. (ECF No. 10 at 7).  In September
2009, the Forest Service informed the Fire District that it could
no longer use the separate road; shortly thereafter, "the Forest
Service destroyed this road." (ECF No. 10 at 3; 1 at 8).
Consequently, the Fire District applied for a special use permit
to plow a portion of Forest Service Road 5400 which would allow
access to Fire Station #83 during the seasonal closure.  (ECF No.
1 at 9).[1]  This permit request was denied.  Id.

---

[1]      Permits are based on Road Closure Orders issued by the
Forest Service. On January 28, 2009, Order 676 was issued, which
prohibited the use of any type of wheeled vehicle on Road 5400.
(ECF No. 1 at 15).  This closure order included the usual
exception for "public safety officers in the performance of an
official duty."  Id.  The order further stated "[p]erformance of
an official duty is defined as response by a public safety

"Due to the impacts of the decisions of the Defendant Forest Service in 2009, the Fire District filed a lawsuit [October 19, 2009] challenging" the validity of the Road Closure Order 676 and the denial of a special use permit. (ECF No. 1 at 9). On December 23, 2009, the Fire District filed a motion for preliminary injunction similar to the one before this Court. (09-CV-3099-EFS). Due to ongoing negotiations, the Court did not rule on Plaintiff's motion. On July 28, 2010, the Fire District voluntarily dismissed its case. Id.

Effective September 1, 2010, the Fire District entered into a twenty-year lease with Washington State Parks and Recreation Commission "for the purpose of constructing, maintaining, and operating a fire station and other emergency management or response facilities." (ECF No. 29 at 51). Consent to the seasonal closure of Forest Service Road 5400 is a condition of this lease. (ECF No. 29 at 51).

## II

A plaintiff seeking a preliminary injunction must establish:

---

official to an emergency or incident in progress. Snow removal operations on any National Forest System road or trail without authorization or approved operating plan is prohibited." Id. On January 21, 2010, Order 706 was issued, which closed Road 5400 to "motorized vehicles except snowmobiles on any National Forest System." This closure order did not include the typical exemption that allows use of motorized vehicles by "public safety officials" in the "performance of an official duty." (ECF No. 1).

> [T]hat he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20, 129 S.Ct. 365, 374 (2008).

Recently, in *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d. 1127(9th Cir. 2011)[2], the Ninth Circuit Court of Appeals held the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*. Under the sliding scale approach, the elements of the preliminary injunction test are balanced so that a stronger showing of one element may offset a weaker showing of another. *Id.* at 1134-35. "A preliminary injunction is appropriate when...serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.*

Although the sliding scale test remains viable, a plaintiff must still "satisfy the other *Winter* factors, including the likelihood of irreparable harm." *Id.* at 1135. The burden of persuasion is on the party seeking the preliminary injunction. The movant must carry its burden by a "clear showing". *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997). "A

---

[2] The circuit's July 28, 2010 opinion at 2010 WL 2926463 was amended on September 22, 2010, 2010 WL 3665149, and again on January 25, 2011.

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION– 4**

preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 129 S.Ct. at 376.

 **1.** Success on the Merits

  a. Breach of Contract and Equitable Estoppel

 Defendants argue Plaintiff's Motion for Preliminary Injunction constitutes a breach of Plaintiff's contractual lease obligation to "consent to the continued and ongoing seasonal closure of the United States Forest Service 5400 road as determined by the State and/or the United States Forest Service." (ECF No. 29 at 5; Exhibit 10). Intervenor-Defendant, with whom Plaintiff entered into the lease, asserts it reasonably relied on the Plaintiff's consent and therefore, Plaintiff is equitably barred from seeking a preliminary injunction. (ECF No. 30 at 7).

 By its own terms, the contract between Intervenor-Defendant State Parks and Recreation Commission and Plaintiff Fire District: "shall be governed by and interpreted in accordance with the laws of the State of Washington." (ECF No. 29, Exhibit 10 at 51 ¶ 10.5). Thus, the issue of equitable estoppel is governed by Washington common law; which provides:

> The requisites of an equitable estoppel are: (1) an admission, statement, or act, inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party arising from permitting the first party to contradict or repudiate such admission, statement, or act.

*Shafer v. State*, 83 Wash. 2d 618, 623, 521 P.2d 736, 739 (1974); *See also Robinson v. City of Seattle*, 119 Wash. 2d 34, 81, 830 P.2d 318, 345 (1992). "Equitable estoppel is not favored, and the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence." *Robinson,* 119 Wash. 2d at 81.

At this juncture, neither Defendants or the Intervenor-Defendant have pled any facts demonstrating reliance on the lease's consent provision, or corresponding loss or injury. Indeed, there is another provision in the lease which allows the Fire District to terminate the lease "at any time and for any reason after providing State with sixty days advance notice." (ECF No. 29, Exhibit 10 at 47, ¶ 5.5). The Fire District provided notice to Intervenor-Defendant in a letter dated November 9, 2011, that it was terminating the lease. (Ex. A to ECF No. 38). As discussed *infra*, however, the Fire District's willingness to consent to closure of the road is nonetheless a factor which has some relevance in determining whether a preliminary injunction is warranted.

### b. 5 U.S.C. § 706(2)(A): Arbitrary and Capricious

In order to succeed on the merits, the Fire District must demonstrate Road Closure Order 706 is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The scope of judicial review under the

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION- 6**

"arbitrary and capricious" standard is narrow: a court "may not supply a reasoned basis for the agency's action that the agency itself has not given," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, (1983), but a court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight System Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)). According to *O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996):

> A decision is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Specifically, an agency must "examine the relevant data and articulate a satisfactory explanation for its action." *F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 129 S. Ct. 1800, 1810, 173 L. Ed. 2d 738 (2009), quoting *Motor Vehicle Mfrs. Ass'n of U.S*, 463 U.S. at 42-44.  This examination should include "rational connection between the facts found and the choice made." *F.C.C.,* 556 U.S. at 502.  In reviewing an agency's explanation, the court should "consider whether the decision was based on a consideration of the relevant factors and whether

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION- 7

there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S,* 463 U.S. at 42-44.

The Fire District argues Forest Service Road Closure Order 706 is based on a flawed safety analysis and is therefore, arbitrary and capricious.  The Fire District's argument concerning the Mixed Use Safety Analysis is two-fold: first, the safety analysis is based on "false supposition" and "illogical reasoning;" and second, the safety analysis fails to consider relevant, mitigating factors.  (ECF No. 10).

The Fire District has valid concerns regarding the Mixed Use Safety Analysis, specifically whether there is support for the conclusion there is a likelihood of a collision between emergency vehicles and snowmobilers/skiers; however, the Forest Service proffers this analysis as only a portion of the administrative record that supports its decision.[3]  The Court has not been presented with a full administrative record to determine to what degree the Forest Service can support this proffer.  Accordingly, the Court is not persuaded the Fire District is likely to succeed on the merits of its Administrative Procedures Act (APA) claim. More specifically, the Court cannot conclude the Fire District is

---

[3]  It is evident from the safety analysis that any plowing of FS 5400 would narrow the corridor on which the snowmobilers and skiers travel.  The Forest Service has presented letters it received from recreational user groups expressing concern (Exs. 7 and 9 to ECF No. 38)that a narrowed travel corridor would increase the likelihood of collisions among snowmobilers and skiers.

likely to establish that Road Closure Order 706 constitutes a "clear error of judgment" by the Forest Service.

The Court recognizes that under the serious questions test, a stronger showing of one or more elements may offset a weaker showing of the merits element. Such an inquiry is not necessary in this case because the Fire District has failed to establish a stronger showing of the other elements.

**1.** Irreparable Harm

Generally, "[p]laintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction." *Alliance For The Wild Rockies,* 632 F.3d. at 1135, citing *Winter*, 555 U.S. at 21. The irreparable harm standard for plaintiffs seeking mandatory preliminary injunctions, however, is heightened. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 878-79 (9th Cir. 2009). A mandatory injunction "orders a responsible party to 'take action.'" *Id.,* quoting *Meghrig v. KFC W., Inc.,* 516 U.S. 479, 484, 116 S.Ct. 1251 (1996). A mandatory injunction "'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'" *Marlyn Nutraceuticals, Inc.,* 571 F.3d at 878-79, quoting *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1980).

The Fire District is seeking a mandatory injunction. Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc.,* 571 F.3d at 878-79.  A long delay by plaintiff after learning of the threatened harm may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction. 11A Fed. Prac. & Proc. Civ. § 2948.1 (2d ed.).

Here, the Fire District argues the irreparable harm element is satisfied because "[t]he practical realities of operating a rural fire district make it so that delays in responding to an emergency inevitably puts lives at risk and jeopardizes the very purpose of the fire district..."  (ECF No. 42 at 6). The Fire District explains that the 35-50 calls Fire Station #83 responds to each winter season will be delayed by a "*minimum* of 20 minutes and can be as long as 2 or 3 hours" because of the distance from emergency responders to the other stations, traffic delays on 1-90, and inherent delays in the call routing and dispatching systems.  (ECF No. 42 at 7)(emphasis original).

Notably, however, the Fire District is unable to point to a single incident of delay which resulted in actual harm.  Even when delayed response time is combined with  other alleged harms (taxpayer expectations, inability to utilize search and rescue

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION- 10**

equipment, and the loss of "right to use and enjoyment of land"), the Fire District has not shown that irreparable harm, in the form of "extreme or very serious damage," will occur.

The mere possibility of injury resulting from lengthened response time is not enough to satisfy the Fire District's burden. Additionally, the Fire District's delay in bringing this motion after learning of the alleged harm, its written consent to the road closure in September of 2010, and the seasonal closures of Fire Station #83 from 2009-2011, all indicate the alleged harm is not serious enough to justify a preliminary injunction.

**2.** Balance of Equities and Public Interest

The Fire District argues "public safety is at risk because of the closure of Fire Station #83":

> This is a case of life or death, temporary injury or lifelong condition. These injuries will be prevented for countless individuals during the pendency of this litigation. It does not appear that there are any other options for the Fire District in the meantime that will prevent these possible harms to the public, because time of response is the culprit.

(ECF No. 10 at 7).

In response, Intervenor-Defendant Washington State Parks and Recreation Commission asserts any plowing of Road 5400 "could have substantial adverse impact on recreational opportunities for users of Crystal Springs Sno-Park." (ECF No. 30 at 8).

Additionally, Defendant Forest Service argues it has a "good faith concern" that lessening the space provided for a wide range

of recreationalists to navigate would increase the risk of "users colliding with a vehicle", "users colliding with each other" or users "having an accident caused by a bad road surface or a ledge." (ECF No. 29 at 9-10).

As both the Defendants and the Intervenor-Defendant raise significant public safety/interest concerns, Plaintiff has not met its burden of establishing "that the balance of the equities tips in his favor, and that an injunction is in the public interest." The Court further notes the Fire District's public safety concerns are undercut by its inability to demonstrate irreparable harm, its delay in bringing this motion, its written consent to the road closure, and the seasonal closures of Fire Station #83 from 2009-2011. All of this indicates the harm alleged by the Fire District is not serious enough to justify a preliminary injunction, especially one that would be mandatory in nature.

**III**

Plaintiff has failed to establish each element of the preliminary injunction test as required by law. Accordingly, the Plaintiff's Motion for Preliminary Injunction is **DENIED.** (ECF No. 5).

///

///

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION- 12**

**IT IS SO ORDERED.**  The District Executive is directed to enter this order and forward copies to the parties.

**DATED** this 8th day of December, 2011.

*s/Lonny R. Suko*

LONNY R. SUKO
United States District Judge